[No. E038122. Fourth Dist., Div. Two. June 30, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
F. PAUL FAILLA, Defendant and Appellant.

**COUNSEL**

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Ronald A. Jakob and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.**—In 1989, defendant entered into a plea agreement in which he pleaded guilty to burglary (Pen. Code, § 459)[1] and sexual penetration by foreign object (§ 289) in Los Angeles County. In 1994, he was paroled and moved to San Bernardino County. As part of his plea agreement, defendant was required to register as a sex offender. (§ 290.) Subsequently, defendant filed a certificate of rehabilitation (§§ 4852.01, 4852.06), which would allow him to seek a gubernatorial pardon of his offenses and, hence, relieve him of his obligation to register as a sex offender. Following a hearing, the trial court denied that request and ruled that defendant had to wait five years from the date of the denial before he could file another petition. Defendant's sole contention on appeal is that the trial court erred in calculating the waiting period to apply for another certificate of rehabilitation. We find no error and will affirm the judgment.

I

### FACTUAL AND PROCEDURAL BACKGROUND

In 1989, there were a series of burglaries and sexual assaults upon women in the Los Angeles County area. Specifically, on July 14, 1989, defendant, who was then 62 years old, entered into victim Lori F.'s apartment through an open window. He blindfolded Lori and raped her while threatening her with a knife and a pair of scissors. On July 22, 1989, defendant broke into victim Elizabeth L.'s home. He blindfolded her and placed a washcloth over her mouth; he then raped her and forced her to orally copulate him. On August 4, 1989, defendant broke into victim Susan W.'s apartment. After waking her up, he forced her to orally copulate him and then raped and sodomized her. On August 12, 1989, after defendant removed a screen and climbed through an open front widow of victim Marie S.'s apartment, he woke her up and inserted his fingers into her vagina while he masturbated. On August 17, 1989, victim Diane M. alerted police to a prowler, later identified as defendant, outside her home who was looking into her bedroom window and attempting to enter through a bathroom window. Two days later officers staked out the area and caught defendant looking into Diane's apartment.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

Defendant was arrested after a short pursuit. He claimed he was merely walking down the street when two plainclothes policemen began chasing him.

Although defendant denied committing the offenses, he accepted a plea bargain of eight years in state prison and pleaded guilty to burglary (§ 459) and sexual penetration by foreign object (§ 289).

Defendant was released from state prison in 1994 and placed on parole in San Bernardino County, where he resided in Victorville with a female companion.

On November 17, 2004, defendant sought a certificate of rehabilitation, for which he was eligible and which would allow him to seek a gubernatorial pardon of his offenses and relieve him of his lifetime obligation to register as a sex offender pursuant to section 290. In January 2005, an investigative report concerning defendant's background and criminal history was prepared by an investigator for the San Bernardino County District Attorney's Office.

A hearing concerning defendant's petition of rehabilitation was held on May 12, 2005. At that hearing, the trial court considered the investigative report as well as a police report dated July 28, 1999, regarding an incident that occurred near defendant's residence. According to the police report, on July 26, 1999, officers received a telephone call concerning a beating. James Madsen was at home in his trailer watching television when he heard a noise outside. He saw defendant reach into the bed of Madsen's pickup truck and take a chainsaw. Madsen went outside, grabbed a push broom, and began beating defendant. Madsen's chainsaw was found in defendant's vehicle. Madsen, who did not know defendant, subsequently placed defendant under citizen's arrest. In the report, defendant claimed that he had met Madsen several months earlier, when Madsen expressed an intent to buy defendant's vintage Mercedes-Benz. Madsen offered to sell marijuana to defendant, which defendant agreed to buy on credit. On the day of the incident, defendant stated that he went to Madsen's residence to repay Madsen for the marijuana he had bought. Madsen became irate when defendant did not have all the money. Madsen began yelling at defendant that he needed to pay the entire debt. He then grabbed a chainsaw and a broom and began beating defendant with the broom.

The trial court also heard testimony from defendant regarding the 1999 incident. This testimony differed from the information attributed to defendant in the 1999 police report. Defendant testified that he had gone to Madsen's residence to pay Madsen money for marijuana that his son had bought and that Madsen became angry and began hitting him with a broom when defendant stated that he did not have all the money. Defendant denied ever using any type of illegal drug.

After hearing argument from counsel and considering the evidence, the trial court denied defendant's request for a certificate of rehabilitation, as there was satisfactory proof defendant violated the law (§ 4852.11). The court also ruled that defendant had to wait five years from the date of the denial before he could file another petition (§ 4852.11). This appeal followed.

II

## DISCUSSION

Defendant contends the trial court erred in calculating the waiting period to apply for another certificate of rehabilitation. Specifically, defendant claims the waiting period is 10 years commencing from the date of the violation of law, which was on July 26, 1999, and thus he should only have to wait until July 26, 2009, before filing a new petition, as opposed to counting five years from the date of the denial of the certificate of rehabilitation petition, which was May 12, 2005.

This is a case of first impression. Our independent research has revealed no case that articulates the proper standard of calculating the waiting period to apply for *another* certificate of rehabilitation after the denial of an initial certificate.

We begin our analysis by discussing the relevant law regarding the procedures for obtaining a certificate of rehabilitation. The Penal Code provides a procedure for applying for a certificate of rehabilitation for "convicted felons who have successfully completed their sentences, and who have undergone an additional and sustained 'period of rehabilitation' in California." (*People v. Ansell* (2001) 25 Cal.4th 868, 875 [108 Cal.Rptr.2d 145, 24 P.3d 1174]; see also §§ 4852.01, 4852.03.) To obtain the rehabilitation certificate, the statute requires that during the rehabilitation period "[t]he person shall live an honest and upright life, shall conduct himself . . . with sobriety and industry, shall exhibit a good moral character, and shall conform to and obey the laws of the land." (§ 4852.05.) With certain exceptions, the statute provides for a seven-year rehabilitation period after release from custody. (§ 4852.03, subd. (a)(3).) Here, a 10-year rehabilitation period was required after defendant's release from custody, since he was required to register as a sex offender pursuant to section 290.[2] (§ 4852.03, subd. (a)(2).)

---

[2] Section 4852.03, provides in relevant part, "(a) The period of rehabilitation shall begin to run upon the discharge of the petitioner from custody due to his or her completion of the term to which he or she was sentenced or upon his or her release on parole or probation, whichever is sooner. For purposes of this chapter, the period of rehabilitation shall constitute five years' residence in this state, plus a period of time determined by the following rules: [¶] . . . [¶]

The person seeking the certificate has the right to appointed counsel. (§ 4852.08; *People v. Ansell, supra,* 25 Cal.4th at p. 875.) In addition, the statutory scheme provides that a certificate of rehabilitation may be pursued without cost to the individual. (See §§ 4852.09 [prohibiting all court fees], 4852.1 [providing for the production of official records at no charge], 4852.18 [providing that the petition and other necessary forms be available at no charge], 4852.04 [establishing a right to counsel and assistance from rehabilitative agencies].)

The district attorney may be directed to investigate the petitioner, here defendant, and report to the court. (§ 4852.12.) The superior court holds a hearing where it considers testimonial and documentary evidence relevant to the petition. (§§ 4852.1, 4852.11.) The court may require the production of judicial, correctional, and law enforcement records relating to the petitioner's crimes, supervised release, and conduct during the rehabilitation period. (§ 4852.1.) The court may issue a certificate of rehabilitation if it finds the petitioner is both rehabilitated and fit to exercise the privileges and rights he lost due to his conviction. (§ 4852.13, subd. (a).) "The standards for determining whether rehabilitation has occurred are high." (*People v. Ansell, supra,* 25 Cal.4th 868, 887.) The certificate of rehabilitation is then forwarded to the Governor; the Board of Prison Terms (now the Board of Parole Hearings (see Gov. Code, § 12838.4)); the Department of Justice; and, if the person has been twice convicted of a felony, the Supreme Court (which, in writing and by a majority, must recommend a pardon before one may be granted). (§§ 4852.14, 4852.16.) "[T]he pardon decision is discretionary, and rests ultimately with the Governor." (*Ansell,* at p. 891.)

The decision whether to grant or deny a petition for a rehabilitation certificate rests in the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal unless there is a clear showing of abuse of discretion. (*People v. Lockwood* (1998) 66 Cal.App.4th 222, 227 [77 Cal.Rptr.2d 769].)

Defendant does not challenge the court's denial of the certificate, but instead claims that the waiting period to file another certificate should commence from the date of the violation of law (here, July 26, 1999) rather than the date the initial certificate of rehabilitation was denied (here, May 12, 2005).[3]

---

(2) To the five years there shall be added five years in the case of any person convicted of committing any offense or attempted offense for which sex offender registration is required pursuant to Section 290 . . . ."

[3] In his reply brief, defendant argues for the first time that, in the alternative, the new period of rehabilitation should be calculated using the date the certificate of rehabilitation was filed.

The relevant statute related to this issue is section 4852.11, which states: "Any peace officer shall report to the court, upon receiving a request as provided in Section 4852.1, all violations of law committed by said petitioner which may come to his knowledge. Upon receiving satisfactory proof of such violation the court *may* deny the petition *and determine a new period of rehabilitation* not to exceed the original period of rehabilitation for the same crime. In that event, before granting the petition, the court may thereafter require the petitioner to fulfill all the requirements provided to be fulfilled before the granting of the certificate under the original petition." (Italics added.)

■   The italicized section of the statute is in dispute as it does not state from what date the "new period of rehabilitation" shall commence. This appeal therefore raises an issue of statutory construction. " '[T]he trial court's construction of a statute is purely a question of law and is subject to de novo review on appeal.' [Citation.]" (*Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 816 [24 Cal.Rptr.3d 393]; see also *People ex. rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.]" (*People v. Flores* (2003) 30 Cal.4th 1059, 1063 [135 Cal.Rptr.2d 63, 69 P.3d 979]; see also *People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232]; *Graham v. State Bd. of Control* (1995) 33 Cal.App.4th 253, 259–260 [39 Cal.Rptr.2d 146].) To determine legislative intent, we first examine the words of the statute, applying " 'their usual, ordinary, and common sense meaning based upon the language . . . used and the evident purpose for which the statute was adopted.' " (*People v. Granderson* (1998) 67 Cal.App.4th 703, 707 [79 Cal.Rptr.2d 268], quoting *In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789]; see also *Flores*, at p. 1063 ["[t]o determine legislative intent, we turn first[] to the words of the statute, giving them their usual and ordinary meaning"].) ". . . 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an

He reasons that that date would prevent any inequities beyond his or any other petitioners' control, such as delays in court proceedings. Defendant's appellate counsel made the same assertion during oral argument.

However, defendant did not make this argument in his opening brief. "As a general proposition, points raised for the first time in a reply brief will not be considered unless good reason is shown for failure to present them earlier. [Citations.]" (*People v. Whitney* (2005) 129 Cal.App.4th 1287, 1298 [29 Cal.Rptr.3d 218].) Defendant has shown no reason he could not have made his argument earlier. Even if the argument were timely, we reject defendant's alternative date to calculate the new period of rehabilitation for the same reasons we reject defendant's other argument.

ambiguity that does not exist.' [Citation.]" ' [Citation.]" (*Coronado*, at p. 151.) If the words of the statute are ambiguous, a court may resort to "extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Ibid.*) Applying these rules of statutory interpretation, a court " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Ibid.*)

In the present matter, section 4852.11, in pertinent part, states a trial court "*may* deny the petition *and determine a new period of rehabilitation* not to exceed the original period of rehabilitation for the same crime." (Italics added.) In general, of course, the word "may" connotes a permissive standard as compared with the mandatory nature of the word "shall." (See, e.g., *In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495]; 1A Sutherland, Statutory Construction (6th ed. 2002) §§ 25.3 & 25.4, pp. 604–614.) It is clear the statute has been interpreted as vesting discretion in the trial court. (See *People v. Lockwood, supra*, 66 Cal.App.4th at pp. 226–227 [discussing the discretionary nature of § 4852.03 et seq.]; see also *Sovereign v. People* (1983) 144 Cal.App.3d 143, 152 [192 Cal.Rptr. 469].) Accordingly, section 4852.11 clearly confers upon a trial court the discretion to set the "new period of rehabilitation" as long as it does "not . . . exceed the original period of rehabilitation for the same crime."

However, the issue still remains from what date the new period of rehabilitation shall commence. The People suggest the new period of rehabilitation should begin from the date of the denial of the certificate of rehabilitation, while defendant maintains the new period should start from the date the violation of law occurred. Based on a reasonable interpretation of the statute, we are inclined to agree with the People. Such an interpretation comports with the apparent intent of the Legislature and with logic.

For example, as the People note, assume for the sake of argument a person is convicted in 1989 and paroled in 1993 for an offense which, under section 4852.03, requires a 10-year rehabilitation waiting period. This person commits a violation of law in 1994, but then waits until 2004 to petition for a certificate of rehabilitation, which is denied based on the 1994 violation of law. The trial court then sets the new period of rehabilitation from the date the 1994 violation of law occurred, as defendant requests. Using defendant's analysis, the new period of rehabilitation would not exist because the 10-year waiting period ceased to exist. There would be nothing to prevent defendant from filing a new petition for certificate of rehabilitation the following day. Utilizing the 1994 date as the waiting period before one could file another petition would result in there being *no* waiting period.

■ Hence, using the date of denial of the petition as the starting date for any new waiting period is rational. This conclusion is supported by the language of section 4852.11, which provides that "the court may *deny* the petition *and* determine a new period of rehabilitation . . . ." (Italics added.) A reasonable interpretation of this language leads to the conclusion that the new period of rehabilitation shall begin when the certificate of rehabilitation is denied.

Defendant maintains that the People's interpretation of the statute violates the legislative intent of the statutes governing petitions for rehabilitation certificates. Specifically, defendant argues that "[i]f one takes [the People's] construction of the statute, this means the violation-free period of time can far exceed what the Legislature intended." We reject this suggestion, since a certificate of rehabilitation is *not necessarily* available to any convicted felon who claims to meet the minimum statutory requirements and is otherwise eligible to apply. As we have explained, the trial court conducts a thorough inquiry into the applicant's conduct and character from the time of the underlying crimes through the time of the certificate of rehabilitation proceeding. (§§ 4852.01–4852.12.) Moreover, the standards for determining whether rehabilitation has occurred are high. (§§ 4852.05, 4852.13, subds. (a) & (b); see § 4852.11; *People v. Ansell, supra*, 25 Cal.4th at p. 887; see also § 4852.13, subd. (a), as amended by Stats. 1996, ch. 129, § 2, p. 648, eff. July 8, 1996 [clarifying that a certificate of rehabilitation "may" issue upon the requisite showing of reform].) Contrary to what defendant seems to imply, "there is no circumstance under which the statutory scheme *requires* or *guarantees* issuance of a certificate of rehabilitation by the superior court." (*Ansell*, at pp. 887–888, italics added.)

We recognize, as defendant points out, that in some instances inequities may arise between one individual and another. However, we stress that the Legislature intended "to apply stricter standards to the application process, and to make it more difficult for ex-felons to receive and maintain certificates of rehabilitation." (*People v. Lockwood, supra*, 66 Cal.App.4th at p. 226.) Accordingly, applying the rules of statutory interpretation, we " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado, supra*, 12 Cal.4th at p. 151.)

## III

## DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 11, 2006, S145716.